IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| SYLVESTER M. CHEATHAM, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:18-cv-00095 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| KANODE, *et al.*, | ) | United States District Judge |
|     Defendants. | ) | |

**MEMORANDUM OPINION**

Sylvester M. Cheatham, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, against the Warden, a doctor, and a nurse at River North Correctional Center (River North). Cheatham alleges that he was denied medical treatment after an injury. Defendants filed motions to dismiss, and this matter is ripe for disposition. Having considered the pleadings, the court concludes that defendants' motions must be granted.

I. BACKGROUND

Cheatham alleges that on July 4, 2017, another inmate hit him on the left side of his head with the metal footrest from a wheelchair, causing injuries to his skin, ear, and eye, and prolonged dizziness. On July 6, 2017, Cheatham was seen by defendant Dr. Stevens, had x-rays taken, and was prescribed ibuprofen. That same day, Cheatham submitted a request for service form addressed to defendant Nurse Parks. In the form, Cheatham noted that he had seen Dr. Stevens that day and had x-rays taken. He also requested a magnetic resonance imaging (MRI) because of his injuries. He did not indicate on the form that an MRI had been ordered by a doctor. On July 10, 2017, someone responded to that request by indicating that Cheatham had been placed on sick call. On August 1, 2017, Cheatham filed a regular grievance, stating that he was still experiencing blurred vision, slight incoherence, dizziness, and headaches. On August 2, 2017, Cheatham was seen in the medical department for a follow-up appointment, at which time

he was referred for consultations with an optometrist and an ear, nose, and throat doctor (ENT). On September 25, 2017, Cheatham had an eye examination. On November 8, 2017, Cheatham was seen by an ENT regarding "left ear pain and hearing loss due to injury." On November 13, 2017, Cheatham had another eye examination. On December 14, 2017, Cheatham was seen by an optometrist. Compl., Dkt. No. 1, 4; Med. Rec., Dkt. No. 1-2, 11-17, 21, Request for Serv. Form, Dkt. No. 1-2, 21; Reg. Grievance, Dkt. No. 1-2, 26.

In his complaint, Cheatham states that on an unspecified date, he saw an unnamed eye doctor at River North who ordered an MRI and that he has not been sent out for the MRI yet. There is no indication in the medical records attached to Cheatham's complaint that any doctor actually ordered an MRI. Cheatham also states in his complaint that he was told that he needs a "good audiogram" but that he has not been sent out for one of those either. The attachments to his complaint show that the ENT who evaluated him on November 8, 2017, noted that he "needs a good audiogram," but Cheatham does not allege, and there is no indication in the medical records, that the ENT or any doctor actually ordered an audiogram. Cheatham alleges that his "problems" are getting worse and "nothing is being done." He claims that Nurse Parks and Dr. Stevens failed to follow the "Medical Standards and Procedures." Compl., Dkt. No. 1, 4-5; Med. Rec., Dkt. No. 1-2, 17; Reg. Grievance, Dkt. No. 1-2, 30.

In a letter submitted with his complaint, Cheatham states that, after he was hit with the wheelchair footrest, another "incident" took place "with another wheelchair in [the] same pod." He does not allege that he was involved in this second incident. Cheatham claims that, after that second incident, defendant Warden Kanode and security staff altered the wheelchairs by bolting down all the removable parts of the wheelchairs. Letter, Dkt. No. 1-1.

II. DISCUSSION

A. **Motion to Dismiss Standard**

The defendants have filed motions to dismiss.  A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level," *id*., with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005).  Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).  A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

In deciding a motion to dismiss, attachments to the complaint may be considered. *See Butters v. James Madison Univ.*, 145 F. Supp. 3d 610, 616 (W.D. Va. 2015) (citing *Sec'y of State for Defence v. Trimble Navigation, Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)); *see also* Fed. R. Civ. P. 10(c) (2018). Here, plaintiff attached certain records to his complaint upon which he relies. In the event of conflict between the bare allegations of the complaint and any attached exhibit, the exhibit prevails. *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

**B. Official Capacity Damages**

To the extent Cheatham brings this action against the defendants in their official capacities for monetary damages, such relief is not available via § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Therefore, the court will grant defendants' motions to dismiss as to Cheatham's claims for monetary damages against defendants in their official capacities.

**C. Dr. Stevens and Nurse Parks**

To state a cause of action under § 1983, a plaintiff must allege facts indicating that plaintiff has been deprived of rights guaranteed by the Constitution or laws of the United States

4

and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1988). To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A prison official is "deliberately indifferent" only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. A claim concerning a disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990). In fact, "many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). A delay in medical treatment may constitute deliberate indifference. *See Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009); *Estelle*, 429 U.S. at 104 (deliberate indifference may manifest by "prison guards [] intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."). In such cases, a plaintiff must show not only that his medical need was objectively serious, but also that the delay in providing medical care caused him to suffer "substantial harm." *See Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008); *Turner v. Kight*, 121 F. App'x 9, 13-14 (4th Cir. 2005) (plaintiff must show the delay, itself, caused substantial harm). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Shabazz v. Prison Health Servs.*, Case No. 3:10cv90, 2011 U.S. Dist. LEXIS 88124, at *19, 2011 WL 3489661, at *6 (E.D. Va. 2011); *see also Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995).

5

Cheatham alleges that an unnamed eye doctor ordered an MRI for him and an ENT told him he needs a "good audiogram," but that he has yet to receive either. Cheatham also states that Dr. Stevens and Nurse Parks failed to "follow the Medical Standards and Procedures." Cheatham does not describe how Dr. Stevens or Nurse Parks failed to follow standards and procedures, however. In fact, Cheatham's complaint does not allege any facts against or conduct committed by either Dr. Stevens or Nurse Parks. Instead, it is only from his attachments to his complaint that the court can discern any facts against these defendants.

Cheatham's complaint and attachments show that he was examined and treated by medical personnel, including Dr. Stevens, following the incident on July 4, 2017.[1] He received in-person medical treatment on multiple occasions, pain medication, x-rays, and multiple specialist consults. Although the treatment he received may not be the treatment he preferred, his disagreement with the medical personnel over the course of treatment is not sufficient to state a constitutional violation. *Wright*, 766 F.2d at 849. Moreover, he has not alleged that he suffered any substantial harm as a result of any delay in treatment.

Based on the allegations and information in his complaint and attachments, the court cannot find that Cheatham has stated a plausible Eighth Amendment claim against either Dr. Stevens or Nurse Park. The only date on which it is clear that Dr. Stevens treated or should have treated Cheatham was July 6, 2017. Cheatham has demonstrated that, on that date, Dr. Stevens examined him, x-rays were taken, and ibuprofen was prescribed. Based on these facts, the court cannot find that Cheatham has demonstrated that Dr. Stevens exhibited deliberate indifference to a serious medical need on that date. Cheatham does not allege that Dr. Stevens was responsible for Cheatham's medical treatment after that date; however, even if he was, the complaint and

---

[1] The court notes that the medical records attached to Cheatham's complaint begin on July 6, 2017. It is not clear whether Cheatham received medical treatment for his injuries from the incident prior to that date but, if he did not, Cheatham does not take issue with the two-day delay between the incident and his medical treatment on July 6, 2017.

attachments show that Cheatham received medical treatment on several occasions after that date. Although Cheatham alleges that a doctor ordered an MRI and an ENT told him he needed an audiogram, he does not allege, and the medical records he submits do not support a conclusion that Dr. Stevens ordered either of these tests, that Dr. Stevens knew that another doctor ordered them, or that they were ever actually ordered. Accordingly, the court cannot find that Cheatham has demonstrated that Dr. Stevens exhibited deliberate indifference after examining Cheatham on July 6, 2017.

As to Nurse Parks, an attachment to Cheatham's complaint shows that Cheatham submitted a request for service form dated July 6, 2017, that was addressed to her. Although he requests an MRI in the form, Cheatham does not indicate that a doctor had ordered an MRI. Further, the medical records he attached to his complaint do not indicate that an MRI was ordered on that day or any other day. Moreover, there is no indication that Nurse Parks knew of any MRI order or actually received the form, as someone else responded to Cheatham's request by indicating that he had been placed on sick call. Accordingly, the court cannot find that Cheatham has sufficiently alleged that Nurse Parks acted with deliberate indifference. Therefore, the court will grant these defendants' motion to dismiss.

**D. Warden Kanode**

As with the other defendants, Cheatham's complaint alleges no facts against or conduct committed by Warden Kanode.[2] However, to the extent that Cheatham may be claiming that

---

[2] The court notes that in response to defendants' motions to dismiss, Cheatham states that he believes it is the Warden's job to "make sure all offenders are . . . protected" because the Warden "controls the whole compound, even medical." Cheatham also states that he believes that the attack on him was not the first time that the other inmate hit someone with a part of his wheelchair. Resp. Opp., Dkt. No. 23, 1. Cheatham has not moved to amend his complaint to add these allegations; however, even if he had, his complaint would nevertheless fail to state a claim. The Eighth Amendment's prohibition on cruel and unusual punishment imposes a duty on prison officials to take "reasonable measures to guarantee the safety of the inmates," a duty that includes "protect[ing] prisoners from violence at the hands of other prisoners." *Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015). A prisoner claiming that a prison official failed to keep him safe from other inmates must show that (1) objectively, the prisoner was "incarcerated under conditions posing a substantial risk of serious harm" and suffered such harm, and (2)

Warden Kanode is liable in a supervisory capacity for the acts or omissions of medical staff, his claim fails. "[S]upervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (citation omitted). "Liability in this context is not premised on respondeat superior, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id.*

"In order to succeed on a § 1983 claim for supervisory liability, a plaintiff must show: (1) that the supervisor had actual or constructive knowledge that h[is] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

"As to the first element, '[e]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury.'" *Id.* (alteration in original). "As to the second element, a plaintiff 'may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Id.* "'Ordinarily, a plaintiff cannot satisfy his burden of proof

---

subjectively, the official had a "sufficiently culpable state of mind," namely, "deliberate indifference to inmate health or safety." *Id.* at 133. In this case, Cheatham's vague and conclusory allegations are insufficient to show that Warden Kanode knew that Cheatham faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *See Farmer*, 511 U.S. at 847. His allegations in the response also do not support a finding of supervisory liability. *See Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014).

by pointing to a single incident or isolated incidents,' for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities." *Slakan*, 737 F.3d at 372 (quoting *Orpiano*, 632 F.2d at 1101). "Finally, as to the third element, 'proof of causation may be direct . . . where the policy commands the injury of which the plaintiff complains . . . or may be supplied by the tort principle that holds a person liable for the natural consequences of his actions.'" *Id.* at 226-27. The causation requirement in a supervisory liability case "is a stringent one," requiring proof that the challenged action was "'the moving force' behind the ultimate violation." *Jones v. Wellham*, 104 F.3d 620, 627 (4th Cir. 1997) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)).

Cheatham has failed to allege facts that would support a plausible claim of supervisory liability against Warden Kanode. At most, Cheatham alleges that he disagreed with the course of medical treatment he received, but he fails to assert how Warden Kanode is involved with his medical treatment at all. Cheatham's allegations fall short of alleging a pervasive and widespread practice of deliberate indifference that in turn posed a pervasive and unreasonable risk of harm. Further, Cheatham fails to allege the existence of documented widespread abuses followed by continuing supervisory inaction. Finally, Cheatham fails to allege facts from which it could be determined that he suffered a constitutional injury which was caused by Warden Kanode's action or inaction. Cheatham's allegations do not tie any actual injury to a specific policy that, in turn, was a "moving force" behind the alleged harm. Accordingly, the court concludes that Cheatham has failed to establish that Warden Kanode was personally and sufficiently involved in any alleged constitutional violation, and, thus, the court will grant his motion to dismiss.

### III. CONCLUSION

For the reasons stated herein, the court will grant defendants' motions to dismiss.

An appropriate order will be entered.

Entered: March 1, 2019.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge